ETSCHEID, Administrator, Respondent, vs. BAKER, Appellant.     112        129
                                                                                       e116      ³525

*October 18 — November 29, 1901.*

*Contract for benefit of third person: Construction: Payment: Release by obligee: Gifts.*

1. The parents of defendant's wife conveyed a farm to him for a recited consideration of $5,000, and he gave back a mortgage securing a bond running to them for that amount, conditioned upon his paying "to them the sum of $4,000, and semi-annually thereon interest at the rate of seven per cent. per annum, the principal to be paid as follows, to-wit, $2,000 within five years from the date thereof, $1,000 within one year after the decease of both of [the obligees] to their daughter A. E. [defendant's sister-in-law], and the remaining $1.000" to be retained by defendant and his wife. Defendant claimed that, as part of the consideration, he also gave to the husband of A. E. notes for $1,000, which were afterwards paid. The bond further provided that in case one of the obligees therein should die the survivor should be "entitled to receive and receipt for the whole of the interest *and principal.*" In an action upon the bond, brought by the personal representative of A. E. more than a year after the death of both obligees, *held*, that the words "and principal" refer to the principal sum of $2,000 which was to become due in five years, and that there was no intention that the $1,000 which defendant agreed to pay to A. E. should ever be paid to the obligees in the bond.
2. The evidence, including indorsements on the mortgage and defendant's own testimony as to payments, is *held* to show that defendant

never paid to the obligees in the bond the $1,000 which he was to pay to A. E.

3. The liability of defendant to pay said sum to A. E. was not in the nature of a gift to her from her parents, requiring delivery to per-fect it, but was an obligation arising under a contract made for her benefit; and, she having known of the contract and assented thereto, the survivor of the obligees in the bond had no authority to discharge defendant from that liability, and the release of the mortgage by such survivor did not operate as such discharge.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge.   *Affirmed.*

This is an action upon a bond executed by the defendant under his hand and seal August 27, 1883, wherein and whereby he agreed to pay to the plaintiff's intestate, Augusta Etscheid, one year after the death of both of her parents, Gottlieb and Anna Wolter, the sum of $1,000; and this action is to recover the same. The defense is to the effect that after the death of Anna, and during the life of Gottlieb, the defendant fully complied with, satisfied, and paid the amount he was required to pay by the bond prior to November 1, 1889, and that on that day Gottlieb executed a satisfaction and release of the bond and the mortgage given to secure the same, and that such satisfaction and release was thereupon recorded.

It appears from the record and is undisputed or found by the court, in effect, that August 27, 1883, Gottlieb and Anna Wolter were both living; that they had two daughters, both of whom were then married,— one (Ida) was the wife of the defendant, and the other (Augusta) was the wife of the plaintiff; that Gottlieb was at that time possessed of considerable property, including a farm of 156 acres of land, admitted to be at that time of the value of $5,000; that on the day and year mentioned Gottlieb and his wife, Anna, executed under their hands and seals a warranty deed of that farm, reciting a consideration of $5,000, and delivered the same to the defendant, who recorded the same August 28, 1883; that at

the time and place of executing such deed the defendant executed and delivered to Gottlieb the bond mentioned, wherein and whereby he was held and firmly bound unto Gottlieb and Anna in the sum of $5,000, to be paid to them "or to their heirs, executors, administrators, and assigns, to which payment well and truly to be made" he bound himself, his heirs, executors, administrators, and each and every of them, jointly and severally. The condition of the bond is as follows:

"The condition of this obligation is such that *whereas*, the said Gottlieb Wolter and Anna Wolter, his wife, have this day conveyed to the said *Charles Baker*, by a warranty deed, duly executed and bearing even date herewith, the farm described in a certain mortgage of the last-mentioned date, duly executed by the said *Charles Baker* and Ida Baker, his wife, to the said Gottlieb Wolter and Anna Wolter, his wife, as collateral security to these presents; and *whereas*, the said *Charles Baker, for and in consideration of the said convey-ance so made* by the said Gottlieb Wolter and Anna Wolter, his wife, to him for said premises, *has covenanted and agreed to* and with the said Gottlieb Wolter and Anna Wolter, his wife, to deliver to them yearly, as long as one of them lives, six cords of soft wood, said wood to be delivered at the residence of said Gottlieb Wolter and Anna Wolter, provided they live not further than six miles from the farm they have this day conveyed to said *Charles Baker;* he has further agreed to pay to them the sum of four thousand dollars, *and semi-annually thereon interest at the rate of seven per cent. per annum; principal is to be paid* as follows, to wit, two thou-sand dollars within five years from the date thereof, *one thou-sand dollars within one year after the decease of both* of the said Gottlieb Wolter and Anna Wolter, his wife, *to their daughter, Augusta Etscheid, and the remaining one thousand dollars they shall retain themselves;* and *it is distinctly agreed* and understood *that in case one* of the said Gottlieb Wolter and Anna Wolter *should die, the survivor shall be entitled to receive and receipt for the whole of the interest and principal;* and it is further agreed that, in case they should remove further than six miles from said farm, the said *Charles Baker* is to pay them the value of such cord wood annually in money: *Now, therefore,* the condition of the above obliga-

tion is such *that if the* said *Charles Baker shall promptly and faithfully pay and deliver all that which he has so promised in consideration of the said conveyance to him*, then and in such case this obligation and mortgage securing the same to be null and void; otherwise to be and remain in full force and virtue."

At the time of executing the bond the defendant and his wife gave back to Gottlieb and Anna Wolter a mortgage upon the farm, conditioned that the defendant should pay to Gottlieb and Anna the $4,000, "according to the condition of the bond."

The defendant testified that at the time of executing the bond and mortgage he also gave two notes of $500 each to the plaintiff, amounting to $1,000, to make "up the $5,000 consideration of the farm;" that he paid one of those notes to the plaintiff in the fall of 1883, and the other in the winter or spring of 1884. February 8, 1884, Anna Wolter died. November 1, 1889, Gottlieb, who was at the time living with the defendant and his daughter Ida, executed, under his hand and seal, a written instrument, whereby he acknowledged satisfaction and payment in full of the mortgage, together with the bond, giving the date of the record of the bond and mortgage, and stating that he thereby released the same, and all his right, title, and interest in and to the premises therein described, and thereby authorized the register to enter satisfaction of record. November 10, 1896, the plaintiff's wife, Augusta, died intestate, and the plaintiff was subsequently appointed administrator of her estate. April 21, 1897, Gottlieb Wolter died.

At the close of the trial the court, in addition to several of the facts stated, found that, in addition to the provisions contained in the bond for the benefit of Gottlieb and Anna personally, the defendant, among other things, promised, agreed, and bound himself to pay to Augusta (since deceased) the sum of $1,000 within one year after the death of Gottlieb and Anna; that said $1,000 was intended by Gottlieb

as an absolute and irrevocable gift *in præsenti* to Augusta, and that the same was during the life of Gottlieb, and before any attempt to revoke the same, duly accepted by Augusta; that said $1,000 so provided for Augusta was in fact an absolute and irrevocable gift *in præsenti* to · Augusta, duly delivered and accepted, and could not be revoked nor discharged nor satisfied by Gottlieb without the consent of Augusta; that no part of the $1,000 had ever been paid to . Augusta or her personal representative; that Augusta had no knowledge of, and did not consent to, such satisfaction and discharge of the bond and mortgage; that if, by such release, Gottlieb intended to satisfy and discharge the defendant from paying the $1,000 to Augusta as he had so agreed, then the same was illegal and void, and of no effect as to her interest therein; that the plaintiff was entitled to recover as such administrator $1,000, with interest thereon at six per cent. per annum from April 21, 1898, amounting in all to $1,164. And as conclusions of law the court found that the plaintiff, as such administrator, was entitled to judgment against the defendant for that amount, with costs, and ordered judgment accordingly.

From the judgment so entered the defendant appeals.

For appellant there were briefs by *James D. Ryder*, attorney, and *F. W. Hall*, of counsel, and oral argument by *Mr. Hall*. They contended, *inter alia*, that Augusta Etscheid never had the right to sue upon this bond and never could have had. The conditions were incidents, and even the obligees could not have sued upon any of the conditions as conditions, but must have sued upon the obligation to pay the penal sum, $5,000. *Carey v. McKey*, 9 L. R. A. 114; *Farni v. Tesson*, 1 Black, 309; *Farrar v. U. S.* 5 Pet. 373; *Turk v. Ridge*, 41 N. Y. 201; *Merrill v. Green*, 55 N. Y. 270; *Simson v. Brown*, 68 N. Y. 355; *Parker v. Jeffery*, 26 Oreg. 186. This bond does not come under that class of cases where a person contracts with a second to pay money to the third, upon which agreement the third may bring suit.

For the respondent there was a brief by *L. T. Davies* and *M. L. Lueck*, and oral argument by *Mr. J. E. Malone* and *Mr. Lueck*. To the point that the delivery was complete, they cited *Crook v. First Nat. Bank*, 83 Wis. 31, 39; *Love v. Francis*, 63 Mich. 181; *Copeland v. Summers*, 138 Ind. 219; *Holmes v. McDonald*, 119 Mich. 563; *Henderson v. McDonald*, 84 Ind. 149; 14 Am. & Eng. Ency. of Law (2d ed.), 1028; 3 Pomeroy, Eq. Jur. (2d ed.), § 1149, note 1, p. 1721; *Pruitt v. Pruitt*, 91 Ind. 595.

CASSODAY, C. J.    The principal difficulty we have experienced in deciding this case has arisen from the ambiguous, if not inconsistent, language employed in the "whereases" or recitals contained in the bond, set forth in full in the foregoing statement. To ascertain the true meaning of such language, regard should be had to the relation of the parties named and the object or purpose to be secured by the parents in giving the deed of the farm to the defendant and taking back from him the bond and mortgage. There is no dispute but that at the time of the execution of the conveyance, August 27, 1883, the farm was worth $5,000, and that the defendant was to pay that amount for it. He claims that he did secure the payment of $1,000 of that amount at the time he received the deed by giving to the plaintiff his two notes of $500 each, which he paid a few months afterwards. The remaining $4,000 was to draw interest at the rate of seven per cent. per annum, payable semi-annually to the parents and to the survivor of them. Such payments of interest amounted to $140 every six months, or $280 a year. No part of the principal sum was to be paid until five years after the date of the bond; and then $2,000 of the principal sum was to be paid to the parents and to the survivor of them. No part of the other $2,000 of the principal sum was to be paid until after the death of both parents; and the $1,000 of that amount here in question was

to be paid to the daughter Augusta "within one year after the decease of both" parents; and the other $1,000 of the principal sum was to be retained by the defendant and his wife, the other daughter, Ida. It is true the provisions for such payments are followed in the bond by a statement to the effect that it was "distinctly agreed and understood that in case one of the" parents "should die the survivor" should "be entitled to receive and receipt for the whole of the interest *and principal*." The last two words appear to have been interlined after the bond was written and before it was signed. Of course, when the bond was executed, either of the parents was liable to die within the five years; and so, in view of the language of the bond, we are constrained to hold that the words "and principal," so interlined, refer to the principal sum of $2,000, which was to become due at the end of five years. This gives effect to all the words employed. True, the bond was for $5,000, and ran to Gottlieb and Anna, and contained a statement that the defendant "agreed to pay to them" $4,000, and semi-annual interest thereon at the rate of seven per cent. per annum; but such statement is immediately followed by an explanation that the principal was "to be paid as follows, to wit, $2,000 within five years from the date thereof,. $1,000 within one year after" the death of both parents "to their daughter Augusta," and the remaining $1,000 was to be retained by the defendant and his wife. There is no pretense that the $1,000 for which the defendant gave the two notes of $500 each to the plaintiff was to be paid to the parents, nor that the principal sum of the $1,000 which was to be retained by the defendant and his wife was ever to be paid to the parents, or either of them. It seems to be equally clear from the wording of the bond that there was no intention that the principal sum of $1,000 which the defendant thereby so agreed to pay to Augusta should ever be paid to the parents, or either of them.

The defendant was allowed, against objection, to testify in his own behalf to the effect that he had paid to Gottlieb "in his lifetime the full $4,000 called for by the mortgage." Assuming the competency of such testimony, yet he testified that his first payment was $200; that his next payment was $800; that he next paid him $600; then $400; then $1,500; and then he gave him a note for $500, which he paid. But he further testified that the indorsements were made on the mortgage by himself. Turning to those indorsements, we first find: "May 27, 1889, paid $200, the interest called for the year 1889." We next find: "Paid on mortgage, Nov. 7, 1889, $800." We next find: "$2,000 paid on this mortgage, 1890. This is all paid on this mortgage." The release of the mortgage was executed November 1, 1889. The only indorsement on the mortgage prior to such release was for interest. The other indorsements were confessedly made subsequent to such release. In fact, the defendant so testified. It is safe to say that he never made any payment not so indorsed. When we remember that the interest on the $4,000 up to the time of such release amounted to more than $1,700, it is manifest from the defendant's own testimony that he never paid to Gottlieb the $1,000 which by the terms of the bond he had agreed to pay to Augusta.

The question recurs whether the defendant is to escape such payment by reason of such release of the mortgage. Gottlieb never surrendered the bond to the defendant. The manifest purpose of the parents, as disclosed in the transaction, was to secure to themselves, in addition to the wood mentioned in the bond, a stated income, to be paid to them and the survivor of them, semi-annually, so long as either of them lived, and $2,000 of the principal sum at the expiration of five years from the date of the bond; and that the balance of the $5,000 consideration of the farm should go in the manner indicated to their two daughters and their husbands, respectively. Counsel contends that, if the $1,000

which the defendant so agreed to pay to Augusta was intended as a gift from her parents, yet there is no evidence that it was in fact ever delivered to her, nor that she ever accepted the same. The bond was mostly to secure benefits to the parents during their lives and the life of the survivor of them. Augusta could claim nothing under the bond until a year after the death of both of her parents. It is not a question of gift by delivery, but a question of the obligations of a contract.

" It is the settled law of this state that when one person, for a valuable consideration, engages with another (whether by simple contract or by covenant under seal) to do some act for the benefit of a third person, the latter may maintain an action against the· promisor for breach of the engagement. After knowledge of and assent to such engagement by the person for whose benefit it is made, his right of action on it cannot be affected by a rescission· of the agreement by the immediate parties thereto." *Bassett v. Hughes*, 43 Wis. 319.

See, also, *Grant v. Diebold S. & L. Co.* 77 Wis. 75; *Fulmer v. Wightman*, 87 Wis. 573; *Enos v. Sanger*, 96 Wis. 150; *Stites v. Thompson*, 98 Wis. 331; *New York L. Ins. Co. v. Hamlin*, 100 Wis. 23; *Kuhl v. C. & N. W. R. Co.* 101 Wis. 56; *Lessel v. Zillmer*, 105 Wis. 338. There is evidence that Augusta and the plaintiff knew that the agreement between the defendant and the parents had been made, and that she assented to the agreement, as found by the court. The propositions stated are peculiarly applicable to the case at bar. The defendant took a conveyance of the farm, and agreed to pay the $1,000 in question as a part of the purchase price. He never paid it, nor any part of it; certainly not to Augusta, nor to any one acting for her. The release mentioned did not discharge the defendant from such obligation, and is no defense. Besides, under the rule of law stated and the fact found, Gottlieb had no authority to discharge the defendant from such liability to Augusta.

*By the Court.*— The judgment of the circuit court is affirmed.