|       |      |
|-------|------|
| 116   | 517  |
| 117   | ¹221 |

TWEEDDALE, Appellant, vs. TWEEDDALE and others, Respondents.

*January 14—February 3, 1903.*

*Contracts for benefit of third person: Assent: Right of action: Privity: Rescission: Consideration: Mortgages: Foreclosure: Recording: Constructive notice.*

1. If a person makes a contract with another for the benefit of a third person, the latter may enforce it at law regardless of his relations with the first person or whether he had any knowledge of the transaction between such first person and such other at the time of its occurrence, and regardless of any formal assent thereto on his part prior to the commencement of the action.

2. Upon the happening of such a transaction as that above mentioned, the law operates upon the acts of the immediate parties thereto, at once creating all the relations of privity between the one making the promise and the one to be benefited thereby requisite to binding contractual relations between them.

3. Contractual relations being established in the manner indicated in the preceding paragraph, neither one nor both of the immediate parties to the transaction can rescind the same or in any way interrupt or prejudice the rights of such other without his consent.

4. A. having conveyed land to B. and in consideration thereof taken a contract obligating B. to perform certain services for him conditioned upon B.'s retaining the title to the property during the term the services are to be performed, and further obligating himself, in case of a sale thereof, to pay A. a specified sum of money, and to pay C. and D., strangers to the trans-

action, certain specified sums of money also, and having taken a mortgage on the land to secure the performance of such contract, the total consideration mentioned in the same being the aggregate of all the contingent payments, and such mortgage being so drawn as to indicate the terms of such contract though it went to A. only, and B. having sold the property, he became, immediately upon the consummation of such sale, absolutely indebted to A., C. and D. for the sums agreed to be paid as aforesaid.

5. In the circumstances above named, though the amounts which B. for the consideration moving from A. promised to pay to C. and D. were in effect gifts to the latter, the consideration between the immediate parties to the transaction supported the promise as between B. and the beneficiaries C. and D., as effectually as if they were actual parties to such transaction and parted with a consideration to either A. or B. to support the promise made for their benefit, the effect thereof being to vest in them the absolute right to the benefit of the promise, regardless of anything the immediate parties to such transaction subsequently did without their consent.

6. In the circumstances above mentioned, the mortgage securing the contract having been properly recorded, though the same was fully satisfied of record, in form, by A. at the request of B. at the time of his sale of the property, and his vendee having paid the full consideration agreed upon by him, and all the circumstances related having occurred before C. and D. had any knowledge of their rights under the contract and security, such rights were nevertheless not impaired by such satisfaction. The debt of B. to them became absolute by the operation of law upon the acts of A. and B. in the original transaction, and the record of the mortgage constituted constructive notice thereof to B.'s vendee, rendering him a party to the wrongful satisfaction of the mortgage by A.

7. Under the circumstances stated in the foregoing, it was competent for either C. or D., notwithstanding the satisfaction of the mortgage, to prosecute a suit for a foreclosure of the same to enforce the performance of the promise made for their benefit.
[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Kewaunee county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to foreclose a mortgage. The facts admitted by the pleadings and found by the court are as follows: October 21, 1896, Mary Tweeddale owned certain land constituting her

homestead.   She conveyed the same to her son, the defendant, *Daniel Tweeddale,* taking therefor a bond for her support: Said parties thereafter united in conveying the land to one *Perry.*   In consideration therefor, in part, he conveyed the land covered by the mortgage in suit, to *Mr. Tweeddale:* Such land was then incumbered by a mortgage, and a second mortgage was placed thereon by the grantee to the grantor. In lieu of the interest which Mary Tweeddale had in the land conveyed to *Perry,* her son gave to her a bond for support, and secured the same by the mortgage in suit upon the land conveyed by *Perry* to her.   The indebtedness was $1,350.   It was conditioned, among other things, that in case *Tweeddale* should at any time sell the land or any portion thereof covered by the mortgage, $1,200 should immediately become due from him to his mother, $50 should likewise become due to his sister, *Margaret Merverden,* and $100 to his brother, *Edward Tweeddale.*   The mortgage specified that it was given to secure all the obligations and conditions of the bond.   It was executed and acknowledged so as to entitle it to be recorded under the registry laws of this state, and was duly recorded. The land covered by the mortgage passed under the control of *Daniel Tweeddale,* and the bond and mortgage, when executed, were delivered to his mother.   Subsequently the condition mentioned in the bond, making operative the promise to pay $1,200 to Mrs. Tweeddale, $50 to her daughter and $100 to her son, who is the plaintiff in this action, was satisfied by *Daniel Tweeddale* selling the land covered by the mortgage, to *John Paul.*   At the time of such sale the claim of Mary Tweeddale under the bond was settled and paid at $686.   She thereupon, in form, fully satisfied the mortgage by signing the usual memorandum to that effect in the margin of the record thereof.   Plaintiff did not give her any authority to satisfy the mortgage as to his interest therein.   Being unable to obtain payment of the sum secured to him by the mortgage, he commenced this action to foreclose the same.

Neither he nor his sister knew that the bond and mortgage made any provision for them till after the mortgage was discharged.

In the nature of conclusions of law, the court made findings to the effect that the provisions in the bond and mortgage as to plaintiff and his sister, under the circumstances existing at the time the mortgage was discharged, were mere incomplete gifts, subject to be recalled by Mrs. Tweeddale, and that she then recalled them. All matters of fact not specifically mentioned, entitling plaintiff to the relief prayed for in his complaint if the interest in form secured to him by the bond and mortgage vested in him beyond the control of his mother upon the execution and delivery of the papers to her, were found by the court or admitted by the pleadings.

The court held as a matter of law that plaintiff had no cause of action, and ordered the complaint dismissed with costs. Judgment was entered accordingly.

The cause was submitted for the appellant on the briefs of *John Watlawa,* attorney, and *Nash & Nash,* of counsel, and for the respondents on that of *M. T. Parker,* attorney, and *Geo. W. Wing,* of counsel.

MARSHALL, J. The agreement by *Daniel Tweeddale* to pay plaintiff $100 and his sister $50, as part of the consideration for the property which came to him from his mother, stands upon the same footing as any promise made by one person to another, for a consideration, for the benefit of a third person. As soon as the title to the land was vested in *Daniel Tweeddale* and the bond and mortgage were delivered to his mother, he became obligated to pay to them that part of the consideration for the land represented by the sums secured to his brother and sister, if the principle controls that a grantor of land becomes obligated to pay the whole or a part of the consideration for the property conveyed to him to a stranger to the transaction if it is left in his hands for

that purpose, and upon his promise to make such payment. We apprehend the trial court so viewed the matter. Notwithstanding the finding that the sum secured to appellant and that secured to his sister were mere gifts, the turning point in the case, in the mind of the circuit judge, we apprehend, was that the beneficiaries did not know of the agreement and did not accept the same or in any way become parties thereto till their mother, with the consent of *Daniel Tweeddale,* rescinded the transaction. An agreement by one person, upon a good consideration, to pay his debt to another by paying the same to a third person, is just as binding where there is no consideration for the promise between the immediate promisee and the third person as where there is such consideration. Whether the benefit secured to the third person is a gift, strictly so called, or one intended, when realized, to discharge some liability of such promisee to the third person does not change the situation. It is the exchange of promises between the immediate parties, and the operation of law thereon, that binds the promisor to the third person. The idea which ruled this case,—that where a person for a consideration paid to him by another agrees to pay a sum of money to a third person, a stranger to the transaction, the latter does not thereby become possessed of the absolute right to the benefit of the promise, nor until he accepts the same in some way; and that while he is ignorant of the promise, or thereafter, at any time before he assents to the transaction, it may be rescinded,—we must admit is well supported in the books. The authorities so holding, in the main, go upon the ground that privity between parties is absolutely essential to a liability of one to another of a contractual nature, and that until the third person brings himself into privity with the one who has promised to be his debtor by at least assenting thereto, he has at least no legal right to the benefit of the promise; and that, till then, the parties to the transaction may rescind it or change it

as they see fit. There is also much authority to the effect that, while the element of privity between the promisor and the third person is essential to render the promise absolutely binding upon the former, no act of the latter is necessary thereto; that the law, operating upon the acts of the parties to the transaction, creates the privity immediately upon its being consummated between them, and that neither one nor both of them can thereafter, without the third person's consent, enforce the promise. The first class of authorities is well represented by the following: *Trimble v. Strother,* 25 Ohio St. 378; *Brewer v. Maurer,* 38 Ohio St. 543; *Crowell v. Hospital,* 27 N. J. Eq. 650; *Durham v. Bischof,* 47 Ind. 211; *Davis v. Calloway,* 30 Ind. 112; *White v. Hunt,* 64 N. C. 496. The second class of authorities is fairly well represented by the following: *Bay v. Williams,* 112 Ill. 91; *Dean v. Walker,* 107 Ill. 540; *Hare v. Murphy,* 45 Neb. 809, 64 N. W. 211, 29 L. R. A. 851; *Graves v. Macfarland,* 58 Neb. 802, 79 N. W. 707; *Brewer v. Dyer,* 7 Cush. 337; *Mallett v. Page,* 8 Ind. 364; *Henderson v. McDonald,* 84 Ind. 149; *Pruitt v. Pruitt,* 91 Ind. 595; *Rodenbarger v. Bramblett,* 78 Ind. 213; *Frank v. New York, L. E. & W. R. Co.* 7 N. Y. St. Rep. 814; *Esling v. Zantzinger,* 13 Pa. St. 50.

It is useless to endeavor to review the authorities touching the subject before us with a view of harmonizing them upon any one single theory as to the principle upon which the liability to the third person is based, or as to what are the essential elements to effect it. There is as much confusion, probably, in the judicial holdings in respect to the matter, as on any question of law that can be mentioned. As indicated, there are authorities to the effect that there is no absolute liability to the third person till in some way he is brought into privity with the promisor. Others are to the effect that such privity is entirely unnecessary. Others, as we have indicated, hold that while the element of privity is necessary,

the law creates it, no act of the third party being necessary thereto.   There are others to the effect that there is no liability at law without the element of privity between the promisor and the third person, hence, if he has a right to enforce the promise the remedy is in equity unless he can show that he adopted the promise made for his benefit so as to become a party thereto.   There are many other phases of the question that find support in the books.   The liability is sustained in some cases under the doctrine of novation, and held not to exist in the absence of any of the elements necessary to satisfy the law on that subject.   In other cases it is held that there is no principle of subrogation or novation involved in the liability; that it rests solely upon and is fixed absolutely by the transaction between the person making the promise and receiving the consideration and the person to whom the promise is made and from whom the consideration moves.   There is confusion not only between different courts, but confusion in the decisions in many jurisdictions in the same court.   The supreme court of Illinois, in *Bay v. Williams,* 112 Ill. 91, speaking on the subject, correctly described the situation in the following language:

"The courts are not harmonious,—not even the courts in the same states,—and it may be added that the cases are not capable of being reconciled.   .   .   .   On the mere authority of adjudged cases in other tribunals, we would have to vacillate to keep in line."

The extent to which the first class of cases we have mentioned goes in one direction is indicated by the following from the syllabus of *Trimble v. Strother,* 25 Ohio St. 378:

"In an action to recover a debt which the defendant agreed with a third party to pay the plaintiff, it is a good defense to show that before the plaintiff assented to or acted on the promise made in his favor, the agreement had been rescinded."

The sharp conflict between the two principal classes of cases is well indicated by reading in connection with that

-quotation the following from the syllabus of *Bay v. Williams,* .supra:

"A purchaser of mortgaged premises from the mortgagor, -who assumes payment of the mortgage debt, or who accepts :a conveyance reciting his assumption of the same with a knowledge of such recital, will at once become personally liable to the mortgagee for the mortgage indebtedness; and he cannot defeat the mortgagee's right to hold him respon- -sible, by procuring a release from the mortgagor."

It is believed that this court is committed to that doctrine, -though it must be admitted that there are expressions in -several opinions that may well be taken as indicating either :a contrary view or that it is uncertain just what the rule here is on the subject. To illustrate, in *Putney v. Farnham,* 27 Wis. 187, we find this language:

"After notice, therefore, to them (the third persons), and -their assent, the liability of the defendant . . . was absolutely fixed. . . . It was no longer in the power of Corlett (the immediate promisee) to forbid payment or to -withdraw his assent, or to require payment to be made to him- self, without the consent of Fallon and Gallagher."

There is impliedly a decision that, till the third person -receives notice of the agreement made for his benefit, and -assents to it, the immediate parties to the transaction may rescind it, or the immediate promisee may himself change the direction of the benefit. In *Bassett v. Hughes,* 43 Wis. 319, the expression in *Putney v. Farnham* was repeated. In *Enos v. Sanger,* 96 Wis. 150, 70 N. W. 1069, language was used, -taken by itself, indicating that privity between the third per- -son and his promisor does not exist prior to his adoption in some way of the promise. But after discussing authorities in -this and other states bearing on the subject, the law as stated in *Brewer v. Dyer,* 7 Cush. 337, and *Bay v. Williams,* 112 Ill. 91, was approved as more fully stating the established -doctrine here than any language used in our own decisions. For the purpose of clearing up any uncertainty existing here

the following, substantially, as a judicial rule, was deduced from our decisions and the authorities which met with our approval:

'Where a grantee in a conveyance assumes and agrees to pay the debt of a third person to his creditor, neither such person nor such creditor being connected contractually with the grantor, as part of the consideration for his purchase, there is no necessity for any consideration to pass from such third person or his creditor to such grantee to support such agreement. A portion of the consideration for the purchase being left in such grantee's hands, appropriated by the grantor to the payment of the debt which such grantee agrees to pay in consideration of the conveyance and of such appropriation, he cannot be heard to object to the performance of his contract because his grantor was not liable for such debt. When the grantor makes such an appropriation, and the grantee, for a sufficient consideration, promises to pay the amount so appropriated to the creditor of such third person, such grantee thereby becomes liable to such creditor; and such liability rests solely on such consideration and such promise.'

That is in harmony with the language used on the subject in *Bishop v. Douglass,* 25 Wis. 696; and *Palmeter v. Carey,* 63 Wis. 426, 21 N. W. 793, 23 N. W. 586. In *Stites v. Thompson,* 98 Wis. 329, 73 N. W. 774, it was said that out of the transaction of one person promising, for a consideration paid to him by another, to pay a sum of money to a third person, the promisor becomes a debtor of such third person the same as if the promise were made directly to him, as liability is determined by his undertaking with his immediate promisee. In *Etscheid v. Baker,* 112 Wis. 129, 88 N. W. 52, the last case here where the subject is discussed, *Bassett v. Hughes* is cited and some significance given to the fact that the person for whose benefit the promise was made knew of and assented to it before any attempt was made to revoke it. However, *Enos v. Sanger* was cited, and there was no intention to disturb the rule there laid down and re-enforced in

*Stites v. Thompson.* Without further discussion of the matter we adhere to the doctrine that where one person, for a consideration moving to him from another, promises to pay to a third person a sum of money, the law immediately operates upon the acts of the parties, establishing the essential of privity between the promisor and the third person requisite to binding contractual relations between them, resulting in the immediate establishment of a new relation of debtor and creditor, regardless of the relations of the third person to the immediate promisee in the transaction; that the liability is as binding between the promisor and the third person as it would be if the consideration for the promise moved from the latter to the former and such promisor made the promise directly to such third person, regardless of whether the latter has any knowledge of the transaction at the time of its occurrence; that the liability being once created by the acts of the immediate parties to the transaction and the operation of the law thereon, neither one nor both of such parties can thereafter change the situation as regards the third person without his consent. It is plainly illogical to hold that immediately upon the completion of the transaction between the immediate parties thereto, the law operates upon their acts and creates the element of privity between the promisor and the third person, and at the same time to hold that such third person's status as regards the promise may be changed thereafter without his consent. The idea that privity between the promisor and the third person is necessary to render the transaction between the original parties thereto beyond the reach of either of them to revoke it, or both acting together to rescind it, springs from the supposed necessity of contractual relations between the promisor and the third person, binding upon the promisor at law. The moment such essential is established, it seems clear that such third person's right accrues and becomes absolute.

True, the doctrine that the element of privity may be established without the knowledge or assent of the third person, other than that constructive assent arising from the operation of law upon the acts of the parties, is inconsistent with the rule prevailing here as to all but married women, that a mere beneficiary of a policy of life insurance has no vested rights therein; but so is the doctrine that mere assent by a third person to a promise made for his benefit will render it irrevocable, inconsistent therewith. Neither the assent of a mere beneficiary in a policy of life insurance, to the promise made for his benefit, nor such assent coupled with an independent promise by the insurance company to him to abide thereby, has any effect upon the power of the assured to control the policy by changing the beneficiary or disposing of the insurance fund by will. The doctrine here in that regard was established at an early day. It is contrary to the rule which prevails generally. It is adhered to under the rule of *stare decisis*, and the doctrine that rules of property established by judicial decisions long adhered to should not be disturbed even if a different decision would be rendered if the court were permitted to treat the subject from an original standpoint. The rule as to insurance contracts has not been applied by this court to any other class of contracts. The court is not disposed to treat it as a principle of general application or extend it beyond the special class of contracts to which it has been applied.

In view of what has been said we must hold that, upon the sale of the land to *Paul, Daniel Tweeddale* became absolutely indebted to plaintiff upon the bond and mortgage mentioned in the complaint for the sum of $100; that the satisfaction of the mortgage by Mary Tweeddale is void as regards such debt; that his interest in the bond and mortgage was sufficiently brought home to *Daniel Tweeddale's* grantee, *Paul,* by the record of the mortgage, to preclude him from being an

528 SUPREME COURT OF WISCONSIN. [Feb.

innocent party to the void satisfaction and successfully invoking the registry laws for protection.

*By the Court.*—The judgment is reversed and the cause remanded with directions to render judgment in favor of plaintiff in accordance with this opinion.