WAUKESHA NATIONAL BANK, Respondent, vs. COOPER & UTTER LUMBER COMPANY, Appellant.

*December 4, 1933—January 9, 1934.*

For the appellant there was a brief by *Shannon & Cronin* of Oconomowoc, and oral argument by *T. T. Cronin*.

For the respondent there were briefs by *Frame & Blackstone* of Waukesha, and oral argument by *Harvey J. Frame*.

WICKHEM, J. The note in suit was negotiated by the payee bank to the Federal Reserve Bank of Chicago. No question is raised as to the status of the transferee as a holder in due course. Under sec. 116.63, Stats., plaintiff, having derived its title through a holder in due course, has all the rights of such a holder. Further than this, no defense is set up that goes to the validity or enforceability of the instrument. Defendant claims that had the National Exchange Bank been the holder of the note on September 23, 1932, when it closed, defendant could have set off its deposit

against the note, thereby completely discharging the note and leaving a balance owing by the National Exchange Bank. This hypothesis cannot aid defendant because the Federal Reserve Bank was the holder at this time, and the payee had no claim against which the deposit could be offset.

If defendant has a claim against plaintiff it arises out of a certain agreement between plaintiff and the National Exchange Bank, and is pleadable as a counterclaim. By the terms of this agreement, executed October 3, 1932, plaintiff purchased certain of the assets of the National Exchange Bank, and as part consideration agreed to pay unsecured depositors of that bank seventy per cent. of the amount of their deposits. It was further agreed that secured deposits and those agreed upon as entitled to preference would be paid in full. It was provided that the National Exchange Bank should secure agreements by ninety-five per cent. of its unsecured depositors to accept seventy per cent. of the amount of such deposits in cash, and to make claim for the remaining thirty per cent. only against the remaining assets which were to be transferred to trustees for liquidation. These assets consisted of items which plaintiff declined to purchase.

Defendant contends that the agreement, properly construed, imposes upon plaintiff an obligation to pay in full the deposits of non-assenting depositors. It is asserted that since the agreement contains no provision whatever specifically dealing with the rights of non-assenting depositors, and since the agreement was not to be in force and effect until ninety-five per cent. of the depositors did assent, it is a fair conclusion that it was the intention that this small group of depositors would be paid in full. It is claimed that this position is further supported by the fact that non-assenting depositors are given no claim by the agreement to assets in the hands of the trustees for liquidation, and that this provision would not have been made unless it was the intention

that the small group who did not consent to the contract were to be paid in full.

The contentions are without merit. The agreement is plain and unambiguous. By its terms the plaintiff agreed to purchase certain assets from the National Exchange Bank at their full and fair value. As consideration it agreed to pay secured deposits and other specified claims in full and all other unsecured depositors to the extent of seventy per cent. The provisions of the contract which are here material are as follows: The plaintiff bank agreed to pay as follows:

"(a) Pay the general unsecured depositors of said National Exchange Bank seventy per cent. of the amount of such deposit as the same existed at the date said agreement becomes effective, unless said deposit be in an amount less than $25, when a larger percentage may be agreed upon.

"(b) Pay in full such deposits as are agreed upon as being preferred or otherwise secured and also agreed upon as being entitled to payment in full.

"(c) Pay in full such other known contract liabilities of such National Exchange Bank as the same exist and are reflected on the books of account of said bank on September 23, 1932, which said books said bank represents fully disclose its liabilities. This agreement further contemplates the liquidation by the purchaser of items of cost of operation and other charges accruing subsequent to said date of September 23, 1932, up to the date of consummation of this transaction and accruals for taxes and other like items."

Defendant was an ordinary, unsecured depositor. There is no description of the claims to be paid in full that applies to the defendant. On the other hand, defendant is specifically and unequivocally referred to in paragraph (a) above. This paragraph does not limit the promise to pay seventy per cent. of the deposits to those creditors who assent to the sale and contract. It applies to all unsecured creditors. When ninety-five per cent. of the depositors consented to the arrangement it was contemplated that plaintiff's obligation should become effective, and that all unsecured deposi-

tors would be entitled to the benefits of the contract. The contract is one for the benefit of such depositors under the doctrine of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440.

It is our conclusion that defendant is not entitled, under the terms of the contract, to receive the full amount of its deposit from the plaintiff.

It is not argued that the contract was void as against public policy, or that the purchase price was unfair, or that for these or similar reasons defendant has some claim upon the assets. Hence we discover no ground upon which defendant is entitled to judgment upon its counterclaim for the full amount of its deposit.

It appears from the record that its right to receive seventy per cent. of its deposit has never been questioned by the plaintiff, and has never been in issue, in this litigation. This amount was tendered by plaintiff before the commencement of this action. Plaintiff concedes liability to this extent, and expresses willingness that the judgment be so modified as to give defendant a credit to the extent of seventy per cent. of its deposit. In its brief, defendant asks that its right to seventy per cent. of its deposit be determined. In view of this, and for the purpose of terminating this litigation, the judgment should be modified by crediting defendant upon the judgment a sum equal to seventy per cent. of its deposit, without interest.

*By the Court.*—Judgment modified as indicated in the opinion, and, as so modified, affirmed, respondent to recover costs in this court.