Neva PLUNKETT, guardian of the person and estate of Pamela Jo Atkins, a minor, and Norma Vesley, Plaintiffs in Error,

v.

Paul Newman ATKINS, Jr., Defendant in Error.

No. 39488.

Supreme Court of Oklahoma.

April 3, 1962.

Rehearing Denied May 5, 1962.

Elton B. Hunt, W. L. Eagleton, James R. Eagleton, Tulsa, for plaintiffs in error.

Troye Kennon, Baker & Baker, Robert N. Wilde, Tulsa, for defendant in error.

IRWIN, Justice.

On September 24, 1956, a written contract was entered into between the mother of an illegitimate child and the child's father. The mother, Norma Vesley, formerly Plunkett, commenced this action in the name of the child, Pamela Jo Atkins, as her mother and next friend, against the father, Paul Newman Atkins, Jr., to enforce the terms of the contract. After the action was commenced, Neva Plunkett, grandmother of the child, was appointed guardian of the person and estate of the child and substituted as one of the plaintiffs. The parties will be referred to as they appeared in the trial court or by name.

## FACTS

The facts disclose that at the time the child was conceived and born, Norma Plunkett was unmarried and the defendant was married and the father of several children. Subsequent to the birth of the child, defendant became reconciled with his wife and Norma Plunkett and defendant agreed to enter into a contract to provide for the child. The pertinent portions of the contract are as follows:

## AGREEMENT

"This Agreement entered into this 24th day of September, 1956, by and between PAUL NEWMAN ATKINS, JR., of Tulsa, Oklahoma, and NORMA PLUNK-ETT of Oklahoma City, Oklahoma.

"WITNESSETH:

"WHEREAS, the said Norma Plunkett conceived a child by the said Paul Newman Atkins, Jr., as the result of an act of sexual intercourse, and said child was born on the 19th day of April, 1955, at Fort Worth, Tarrant County, Texas; and

"WHEREAS the said Paul Newman Atkins, Jr. is a man with a very substantial income and desiring to make adequate provisions for the support and education of said child of the parties, suitable to Paul Newman Atkins, Jr.'s circumstances, station in life and standard of living; and

"WHEREAS, the said Norma Plunkett is without property and is unable to make adequate provisions for the support and education of said child; and

"WHEREAS, neither of the parties hereto wish to impose upon any other persons any of the responsibility of the maintenance and support of said child of the parties;

"NOW, THEREFORE, in consideration of the mutual covenants hereof, the said Paul Newman Atkins, Jr., and Norma Plunkett agree as follows:

"I.

"The said Norma Plunkett shall institute no action or proceedings in any Court to establish judicially the fact that the said Paul Newman Atkins, Jr., is the father of said child.

"II.

"Paul Newman Atkins, Jr., recognizes and acknowledges that he is morally and legally responsible for the support and education of the said child in a manner suitable to the said Paul Newman Atkins, Jr.'s circumstances, station in life and standard of living from the date of this contract until said child shall become eighteen (18) years of age or until the death of said child, whichever shall occur sooner, and the said Paul Newman Atkins, Jr. recognizes a moral responsibility to afford said child a fair start in her adult life.

"III.

"Upon the execution of this Agreement by the parties, the said Paul Newman Atkins, Jr. shall purchase, acquire and deliver to Norma Plunkett a policy of life insurance on the life of said Paul Newman Atkins, Jr. in the sum of Fifteen Thousand Dollars ($15,000.00), said policy shall be owned by Pamela Jo Atkins Plunkett as the sole and only beneficiary under said policy, said policy shall not be pledged or encumbered in any manner prior to the said Pamela Jo Atkins Plumkett attaining the age of eighteen (18) years. All proceeds, dividends and other benefits of said policy to be payable to Pamela Jo Atkins Plunkett upon her attaining the age of eighteen (18) years. It is further mutually agreed that in the event of the default of the payment of any premiums due on said policy by Paul Newman Atkins, Jr., the premiums may be advanced by Norma Plunkett and all sums so advanced shall be reimbursed by Paul Newman Atkins, Jr. with interest at the rate of ten percent (10%) from date. * * *"

The contract further provided that Norma Plunkett would take the responsibility of all the care and custody of the child and the defendant would pay the sum of $200.00 per month.

Following the execution of the contract, defendant made the payments as provided in the contract until February, 1958, and also obtained an insurance policy in the sum of $15,000.00. In February, 1958, Norma Plunkett married and the monthly payments were reduced from $200.00 per month to $100.00.

This action was instituted to enforce the provision of the September 24, 1956 contract which provided for a $200.00 per month payment and to require defendant to obtain the type of insurance policy required by the contract.

The trial court found that the 1956 contract was not a third party beneficiary contract and the same had been modified by a subsequent contract between the child's mother and its father; that the insurance policy obtained by the father was in substantial compliance with the insurance policy required in the original contract. Plaintiffs perfected this appeal from the order overruling their motion for a new trial.

## ISSUES

(1) Was the contract of September 24, 1956, made expressly for the benefit of the child, and as such, constitute a third party beneficiary contract, or was such contract for the mutual benefit of the mother and defendant with only incidental benefits going to the child? (2) If the contract does constitute a third party beneficiary contract, could the parties modify said contract by decreasing the benefits of the third party beneficiary without the consent of the third party beneficiary? (3) Does the insurance policy, hereinafter discussed, substantially comply with the policy required in the contract of September 24, 1956?

## CONCLUSIONS

The mother of an illegitimate unmarried minor is entitled to its custody,

service and earnings (Title 10 O.S.1961 § 6) and must give it support and education suitable to her circumstances. Title 10 O.S. 1961 § 4. However, the father of an illegitimate child can become liable for the maintenance of such child through his voluntary consent or when proceedings are brought under Title 10 O.S.1961 §§ 71 through 81, both inclusive. If the statutory proceedings are followed and the accused father "be found guilty, he shall be charged with the maintenance of the child in such sum or sums, and in such manner as the court shall direct, * * *."

In the instant action, the defendant, the father of the illegitimate child, entered into a valid and binding contract for the support and education of the child and to afford the child a fair start in her adult life. The trial court found the contract was entered into "in consideration that Norma Plunkett would not institute any action or proceeding in any court to establish judicially the fact that said Paul Newman Atkins, Jr., was the' father of the said Pamela Joe Atkins * * *."

In discussing the validity and enforceability of a promise to support or provide for an illegitimate child, 39 A.L.R. 448, states:

"With apparently but one exception, the courts which have discussed the question of who is legally entitled to enforce a contract by a putative father to provide for or support his illegitimate child have held that, since the contract is for the child's benefit, it may be enforced by the child in its own name, although the contract was between the father and the mother, and the child was not a privy thereto.

* * * * * *

"The cases 'seem to have established the doctrine that, if there be sufficient consideration between the contracting parties to make the contract legally binding as between themselves, the relation of parent and child between the promisee and the person to whom the promisor has undertaken to pay will be sufficient to give to the child, as

beneficiary, a legal right to demand and enforce the performance of the promise; * * *' ".

In the instant action the trial court found the contract was for consideration and the defendant does not contend that the contract was without consideration.

Title 15 O.S.1961 § 29 provides that a contract made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it. In construing this statute in Watson v. American Creosote Works, Inc., 184 Okl. 13, 84 P.2d 431, we held:

"* * * To entitle a third person to maintain an action to enforce such a contract, it must appear that the contract was made 'expressly' for his benefit, and it is not sufficient for him to show that he will be incidentally benefited by the performance of the contract."

■ In determining whether the contract of September 24, 1956, was made expressly for the benefit of the child or whether it was made for the mutual benefit of the mother and defendant with only incidental benefits going to the child we should take cognizance of Cities Service Oil Co., v. Geolograph Co., 208 Okl. 179, 254 P.2d 775, wherein we held:

"In determining what parties intended by contract, court should, as far as possible, place itself in position of parties when contract was made, and to extent their mutual intentions is ascertainable and lawful, give effect thereto."

When the mother and father entered into the contract of September 24, 1956, both parties recognized and the contract specifically provided that (1) defendant was a man with a very substantial income and desired to make adequate provisions for the support and education of the child suitable to defendant's circumstances, station in life and standard of living; (2) the mother was without property and unable to make adequate provisions for the support and educa-

tion of the child; (3) neither the mother nor the father wished to impose upon any other persons any of the responsibility of the maintenance and support of the child; defendant recognized and acknowledged that he was morally and legally responsible for the support and education of the child in a manner suitable to his circumstances, station in life and standard of living until the child became eighteen (18) years of age and recognized a moral responsibility to afford said child a fair start in her adult life; (4) defendant would purchase an insurance policy on his life, to be owned by the child as the sole and only beneficiary and all proceeds, dividends and other benefits of said policy to be paid to the child upon her attaining the age of eighteen (18) years.

It is to be noted that the contract contained no provisions whatsoever relating to (a) the marriage of the mother, or the marriage of the child in future years; (b) the support and education of the child if the mother should later acquire property and was then able to make adequate provisions for the support and education of the child; (c) the mother or any other person having benefit of the money except the child, or (d) that the contract could be modified by the parties.

As heretofore stated, had proceedings been brought pursuant to Title 10 O.S.1961 §§ 71 through 81, both inclusive, defendant could have been charged with the maintenance of the child in such sum or sums, and in such manner as the court should direct. It is apparent that the contract voluntarily entered into by defendant, imposed upon the defendant a greater responsibility than that provided by statute.

In the Schumm by Whyner v. Berg, 37 Cal.2d 174, 231 P.2d 39, 21 A.L.R.2d 1051, which defendant admits involves basically the same set of facts, the Supreme Court of California held that that contract between the mother and putative father was for the benefit of the child as a third party beneficiary. Defendant contends this case is distinguishable however, and states the most important distinction being that the duties of the father of an illegitimate child are distinctly different under the California Code from his obligation under the Oklahoma Statute.

In comparing the California Code with the Oklahoma statutory provision with reference to duties of a father of an illegitimate child, we can find no material difference to sustain defendant's contention.

■ In considering the contract in the case at bar in connection with the circumstances of the parties when the contract was entered and their mutual intention, we can only conclude that the contract was made expressly for the benefit of the child. We therefore hold that the contract of September 24, 1956, was made expressly for the child's benefit and such contract constitutes a third party beneficiary contract.

The next issue to be determined is whether a third party beneficiary contract can be modified by the makers thereof without the consent of the third party beneficiary, where such modification decreases the benefits of the third party beneficiary.

■ Assuming, but not deciding, that the mother and defendant modified the original contract, the child, at the time the original contract was executed was approximately seventeen (17) months of age and the child could not act on the offer, accept or reject the terms and conditions of the contract. In Waterman v. Morgan, 114 Ind. 237, 16 N.E. 590, cited with approval in Berry v. Cooley, 188 Okl. 426, 109 P.2d 1081, the Supreme Court of Indiana said:

"* * * Here, appellees, for whose benefit the promises were made, were infants. No formal or express acceptance was necessary on their part. The provision for them was in the way of a settlement of a portion of the grandfather's estate upon them, and was beneficial to them; and therefore an acceptance by them will be presumed as contemporaneous with the promises. * * *"

732

Rhodes v. Rhodes (Ky.), 266 S.W.2d 790, involved the right of the parties to rescind a third party contract wherein the third party was a minor. Therein the Court of Appeals held:

"Where son was infant at time father entered into employment contract which provided for annuity payments to son in event of father's death prior to certain date, son's acceptance of benefits of contract at time of execution of contract would be presumed."

In the body of the opinion, it is stated:

"In view of the fact that John D. Rhodes, Jr., was an infant at the time of the execution of the 1947 contract, we are of the opinion that his acceptance of the contract for his benefit should be presumed. The theory of presumed acceptance by an infant was followed by the Indiana Court in Waterman v. Morgan, 114 Ind. 237, 16 N.E. 590, and this theory is consistent with the theory of the presumed acceptance by an infant of a deed made to him, which has been followed by our court. * * *."

We therefore conclude that the child accepted the terms and conditions of the contract contemporaneous with the making of the contract by the mother and the father.

■ In Donaldson & Yahn v. Benight, 105 Okl. 108, 232 P. 116, we said:

"If the party for whose benefit the contract was made acts on the offer as provided by the terms of the agreement, he becomes entitled to the benefits provided by the contract as fully as if he had joined in the making of the contract in the first instance. After the third party has acted on the offer or terms of the contract, the original parties to the contract cannot change or modify the provisions without the consent and agreement of the beneficiary or third party. Tweeddale v. Tweeddale, 116 Wis. 517, 93 N.W. 440, 61 L.R.A. 509, 96 Am.St.Rep. 1003;

Bay v. Williams, 112 Ill. 91, 1 N.E. 340, 54 Am.St.Rep. 209."

■ We conclude that since the contract was made for the benefit of the child and the child accepted the terms and conditions of such contract contemporaneous with the making thereof, the original contract could not be modified by a subsequent contract which decreased the benefits of the child without its legal consent.

■ We will now determine if the insurance policy obtained by the defendant substantially complies with the policy required under the contract. The policy is a twenty year term policy and names the defendant as the insured with the face amount of the policy, $15,000.00, payable to the insured's executors or administrators. On the Form of Collateral Assignment was listed the name of Norma L. Plunkett. The policy further provided for payment upon receipt at any time of due proof of the death of the insured prior to the Term Expiry date. However, the child is not mentioned in the policy, no dividends or other benefits accrue; there is no cash surrender value during the term of the policy or cash value at the expiration of the policy. The only benefits are the death benefits if the insured should die during the term of the policy.

In the second paragraph of the contract, defendant states that he desired to make adequate provisions for the support and education of the child, suitable to his circumstances, station in life and standard of living and that he recognized a moral responsibility to afford said child a fair start in her adult life.

The third paragraph of the contract provides that defendant shall purchase, acquire and deliver to Norma Plunkett a policy of life insurance on the life of defendant and said policy shall be owned by the child as the sole and only beneficiary and the policy shall not be pledged or encumbered; that all proceeds, dividends and other benefits of said policy shall be payable to the child upon her attaining the age of eighteen (18) years.

We can only conclude that the policy of insurance does not substantially comply with the policy required under the terms of the contract or with the intent of the parties thereto.

The cause is therefore reversed and remanded with directions to the trial court to vacate the judgment entered and enter judgment for Pamela Jo Atkins, consistent with the views herein expressed.

Reversed and remanded with directions.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.