## Estate of Ahern : State, Appellant, v. Ahern, Respondent.

*November 27, 1964—January 5, 1965.*

For the appellant the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

For the respondent there was a brief by *John T. Harrington,* attorney, and *John L. Bruemmer* of counsel, both of Madison, and oral argument by *Mr. Harrington.*

HALLOWS, J.   On January 12, 1962, William B. Ahern and three other executives of Oscar Mayer & Co., Inc. (Oscar Mayer) were killed in an airplane accident while traveling in a company-owned airplane on company business. At the time of Ahern's death Oscar Mayer had in effect two policies of insurance upon his life; one, a noncontributory group life insurance policy issued by Metropolitan Life Insurance Company (Metropolitan policy) as a part of the

Oscar Mayer retirement and pension plan; the other, the accidental death group policy involved in this appeal.

Under the Metropolitan group policy an employee of Oscar Mayer could from time to time change the beneficiary by notifying Oscar Mayer and presenting his certificate of insurance. Upon the receipt of the certificate of insurance which was originally given to the employee upon his coming under the policy and which contained a designation of his beneficiary, Oscar Mayer would endorse the change of beneficiary on the certificate and return it to the employee. William B. Ahern on December 26, 1954, designated his wife Catherine E. Ahern as beneficiary of the Metropolitan policy and such designation continued unchanged to the time of his death.

The other policy issued by the Mutual Benefit Health & Accident Association of Omaha, Nebraska (Omaha policy) insured certain key employees of Oscar Mayer against accidental injury and death while traveling in the company's airplane in the course of their employment. Ahern was not named specifically in the policy but came under its protection as a "protected person" by qualifying as one of the members of the class designated therein. The policy was applied for by Oscar Mayer without consulting its employees or having any duty to do so and without any obligation to provide such insurance.

In negotiating for this group accident policy, endorsements were attached modifying the printed portion of the policy. Paragraph 14, page 24, of the printed part of the Omaha policy provided:

"Change of beneficiary: The right to change of beneficiary is reserved to the protected person and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy."

This was modified by rider No. 373M which provided:

"(1) The beneficiary with respect to loss of life of a protected person shall be as follows:

"100% to the beneficiary named in said protected person's non-contributory group life insurance policy furnished by the policyholder.

"(2) The provision of the policy which reserved the right to change of beneficiary to the protected person is hereby made inoperative.

"(3) The following cancelation provision is incorporated in the policy as a part of the general provisions:

"This policy may be canceled by either the policy holder or the association by mailing or delivery of written notice to the other stating the hour cancelation becomes effective. If canceled by the association, not less than ten days prior notice shall be given. Cancelation shall be without prejudice to any claim originating prior thereto.

"If this policy is canceled by the policyholder, earned premium will be computed in accordance with the customary short rate table and procedure, but in any event the association will retain not less than $1,000 minimum premium. If this policy is canceled by the association, earned premium will be computed on a pro rata basis. In event of cancelation, the association will return promptly to the policyholder any unearned portion of the premium previously paid."

On February 1, 1962, Oscar Mayer notified the Mutual Benefit Health & Accident Association that William B. Ahern had been killed in an airplane accident, was covered by its policy, and his beneficiary named in the Metropolitan policy was Catherine E. Ahern, the decedent's widow. Sometime later the $50,000 benefit was paid under the Omaha policy to the widow.

The trial court held that because printed paragraph 14 of the Omaha policy, in respect to the right of a person like the decedent to change his beneficiary, was eliminated by the endorsement, the law of contracts governing third-party-beneficiary contracts and particularly *Tweeddale v. Tweed-*

*dale* (1903), 116 Wis. 517, 93 N. W. (2d) 440, applied. Under this doctrine a contract for the benefit of a third party cannot be changed without the consent of the third party. Under the trial court's view and that of the estate, the effect of the endorsement was not to grant to the decedent and other protected persons any right to change their respective beneficiaries who were designated by Oscar Mayer by reference to the designations made under the Metropolitan policy.

The state on the other hand contends that under the Omaha policy the beneficiary to receive the accidental death proceeds thereof is whoever is the one named as beneficiary of the Metropolitan policy to receive the ordinary death benefit at the time of the employee's death. This contention is based upon the language in the rider that the beneficiary named in the Omaha policy "shall be" the beneficiary named in the Metropolitan policy. The controlling question is whether the language of the Omaha policy designating the beneficiary by reference to the Metropolitan policy gave the employee the right to change his beneficiary.

These insurance policies are group policies, not individual policies. Under the group Metropolitan policy which covered many more employees than the Omaha policy, the designations of beneficiaries are not attached as riders to the policy. It is customary in such group insurance to issue the master policy to the employer and furnish certificates of insurance to those persons covered by the master group policy. Neither Ahern's certificate nor the policies are in the record but certain provisions of both policies were read into the record. It was clear that under the Metropolitan group policy Oscar Mayer kept a record of the designations of beneficiaries which were made from time to time and endorsed the current beneficiary on the certificate of insurance held by the employee. This method of the employer's keeping the record of the current beneficiaries under a group

policy covering employees is commonplace. See *Luebke v. Vonnekold* (1947), 250 Wis. 496, 27 N. W. (2d) 458; *Kaiser v. Prudential Ins. Co.* (1956), 272 Wis. 527, 76 N. W. (2d) 311.

The printed form of the Omaha policy reserved to the protected person the right to change a beneficiary. Although this provision was made inoperative by the rider at the time of the issuance of the policy, that portion of the rider must be read with the other provisions of the same rider to ascertain the reason therefor. These provisions provided the beneficiary shall be the beneficiary of the Metropolitan policy and the right to cancel the policy was reserved to Oscar Mayer.

In designating the beneficiaries of the Omaha policy Oscar Mayer did not consult its employees but by the rider provided the beneficiary of each protected person "shall be" the beneficiary in the Metropolitan policy. We think it of some significance that the tense of the verb is future. Oscar Mayer in keeping a record of the beneficiaries from time to time under the Metropolitan policy could well anticipate changes in beneficiaries to meet changing conditions. The language of the rider in the first subparagraph designating the beneficiaries in reference to the Metropolitan policy carries with it the right to change the beneficiary as provided in that policy. Thus by reference Oscar Mayer correlated the two insurance policies. The rider then makes the provision in the Omaha policy reserving the right to change the beneficiary under the terms of that policy "inoperative." This language does not expressly say that the right is denied or withdrawn. Making this provision inoperative has no more legal effect than if this provision of the paragraph had never been in the printed form. If this provision were not made inoperative, an employee would have the power to change his beneficiary of the Omaha policy independent of his designation under the Metropolitan policy and to desig-

nate a beneficiary different therefrom. The inapplicability of this provision in the Omaha policy was necessary and compatible with having the same beneficiary for both policies and does not require a narrow construction that an employee had no power to change the beneficiary of the Omaha policy.

We find nothing in the record why Oscar Mayer would allow its employees to change beneficiaries under a group life insurance policy but not allow the same employees to change the beneficiaries under an accidental death policy. Nor does the nature of the insurance suggest any reason for any difference. We construe the Omaha policy as giving a right to a protected person thereunder to change his beneficiary in accordance with the manner and the right he has under the Metropolitan policy.[1]

No serious argument is made that such a right is not sufficient subject matter to ground a tax under sec. 72.01 (7), Stats. The relationship of the decedent with the Omaha policy was that certain benefits would be paid upon injury or his accidental death, *i.e.*, he was the insured, and that he had a right to change the beneficiary to receive the death proceeds. He was not the owner of the policy; he did not take it out or pay the premiums. This section as initially enacted would not have covered the policy because, as we said in *Will of Allis* (1921), 174 Wis. 527, 184 N. W. 381, the legislature intended to include as taxable only such insurance as the insured effected on his own life for the benefit of another and on which he paid the premiums. After the amendment of the section by ch. 462, Laws of 1929, we stated in *Estate of Siljan* (1939), 233 Wis. 54, 288 N. W. 775, that the section taxed the insurance provided by an insured on his own life if premiums were paid by a third

---

[1] Under this construction of the Omaha policy, sec. 246.09, Stats., relating to a married woman's right as a beneficiary of certain policies of insurance, has no application even if that section applies to accidental death insurance, a question we do not decide. See *Luebke v. Vonnekold, supra.*

person out of funds supplied by the insured, but held the section did not include insurance effected by the insured on his life for the benefit of another who paid the premiums thereon.

By ch. 405, Laws of 1939, this section was further broadened in scope to its present form to make taxable the proceeds of "insurance payable upon the death of any person" if at the time of his death any legal incidents of ownership in such insurance remained in him. This section is substantially broader in scope than the sec. 2042 (2) of the 1954 Internal Revenue Code, 26 USCA, p. 282, sec. 2042 (2), taxing "insurance under policies on the life of the decedent" which was construed in *In re Noel's Estate* (3d Cir. 1964), 332 Fed. (2d) 950, not to subject accident insurance (airplane-flight insurance) to the federal estate tax. In the instant case, the power to change the beneficiary, though perhaps not an unrestricted power, "remained" in the decedent and is sufficient to support the inheritance tax.

*By the Court.*—Order reversed.

BEILFUSS, J., dissents.